UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRIAN D. BARLOW,
                               Plaintiff,

        -v-                                       DECISION AND ORDER
                                                   06-CV-6592   CJS(MWP)

MALE GENEVA POLICE OFFICER WHO
ARRESTED ME ON JANUARY 2005,

                               Defendant.
_____

APPEARANCES

For Plaintiff:                Jessica Myers Patrick, Esq.
                                       Harter Secrest & Emery LLP
                                       1600 Bausch & Lomb Place
                                       Rochester, New York 14604

For Defendant:             Gerard E. O'Connor, Esq.
                                       Lippman O'Connor
                                       300 Olympic Towers
                                       300 Pearl Street
                                       Buffalo, New York 14202

INTRODUCTION

      This is an action pursuant to 42 U.S.C. § 1983, in which Plaintiff alleges that he was injured while working as a paid confidential informant, when the defendant "John Doe" police officer used excessive force against him while effecting a sham arrest of Plaintiff, in conjunction with the actual arrest of another man who was the target of an undercover sting operation. Now before the Court is Defendant's motion for summary judgment (Docket No. [#47]). The application is granted in part and denied in part.

BACKGROUND

Unless otherwise noted the following are the facts of this action viewed in the light most-favorable to Plaintiff. In January 2005, Plaintiff was working as a paid confidential informant for the County of Ontario, New York, and the Ontario County Drug Task Force. Plaintiff worked on drug investigations with two Ontario County Sheriff's Deputies, Brad Falkey ("Falkey") and John Storer ("Storer").[1] Prior to the event at issue in this lawsuit, Plaintiff had made between twenty and thirty controlled drug buys for Storer and Falkey. (Plaintiff's Deposition at 44). As part of his work as an informant, Plaintiff understood that officers might interrupt a drug sale and arrest the target of the sting operation on the spot. (*Id*. at 59). Plaintiff also understood that he might be "arrested" along with the target, in order to protect his identity as an informant. (*Id*. at 59-62). However, prior to the incident at issue in this action, Plaintiff was never arrested as part of any sting operation. (*Id*. at 49). Instead, in all prior instances in which Plaintiff had acted as an informant, he was not present when officers arrested the target of the investigation. (*Id*.)

In or about 2004, Plaintiff fractured his left wrist in an incident unrelated to the present lawsuit. (*Id*. at 57). Plaintiff's wrist did not completely heal, however, and he told Falkey and Storer that he "still had a problem with [his] wrist." (*Id*. at 58). According to Plaintiff, he informed Falkey and Storer about the problem with his wrist, since he was worried that during a controlled buy, he might be "grabbed," which could re-injure his wrist. (*Id*. at 58-60).

On the date at issue in this lawsuit, January 6, 2005, in the Village of Phelps, New York, Plaintiff was working as a paid confidential informant for Falkey, Storer and the Ontario County Drug Task Force. On this occasion, Falkey and Storer had asked three

---

[1] It appears that Plaintiff has incorrectly referred to Storer as "John Storm" in papers filed in this action.

officers from the City of Geneva Police Department to assist them with the "buy bust" operation. The plan called for Storer to pose as a buyer interested in purchasing Vicodin from the target of the investigation ("the Target"), whom Plaintiff was going to introduce to Storer in the parking lot of a restaurant. Falkey, the three Geneva police officers and at least one Ontario County Sheriff's deputy were positioned around the restaurant.

Storer met Plaintiff and the Target in the parking lot, purchased Vicodin and then left the scene. Immediately thereafter, the Target, who was driving his car, and Plaintiff, who was in the passenger seat of the Target's car, drove across the street to a convenience store. Unbeknownst to the Target, the three Geneva Police officers were in an unmarked car in the parking lot of the convenience store, from where they had been observing the controlled buy. The officers were surprised that the Target drove into the parking lot where they were sitting, because they were expecting that he and Plaintiff would drive directly back to the Town of Manchester, New York, where they both lived. Furthermore, the officers were planning to make a traffic stop of the Target's car and arrest him after he had left the Village of Phelps. Instead, the officers decided to make the arrest immediately, in the parking lot of the convenience store.

According to Plaintiff, as he and the Target were walking toward the convenience store, two police officers, with their weapons drawn, told Plaintiff and the Target to "freeze." (Pl. Dep. at 52). Plaintiff maintains that at that time, he had no understanding that the officers were acting in connection with the controlled buy in which he and the Target had

3

participated minutes earlier. Instead, Plaintiff contends that he thought that he was actually being arrested for some other reason. (*Id*. at 53-54)[2]

The police officer who "arrested" Plaintiff, and placed him in handcuffs, was one of the three Geneva Police Department officers. At deposition, Plaintiff vaguely "identified" the officer who arrested him as being the one who appeared to be the oldest of the three officers:

> Q. And then what happened?
>
> A. I walked back to the car, the officer arrested me.
>
> Q. Do you know the identity of the officer?
>
> A. I just know he works for the City of Geneva, he's the older gentleman, not the younger ones. [sic]

(Pl. Dep. at 52). Plaintiff did not give any more precise physical description of the arresting officer. However, it clearly appears from Plaintiff's deposition that he could distinguish the aforementioned "older" officer from the two "younger" ones.[3]

As for the amount of force that the officer allegedly used when arresting Plaintiff, Plaintiff stated as follows:

> He came up behind me, said you're under arrest. I told him, I said, look it, I'm still under therapy for my wrist. My left wrist is broken, do not bend or twist it, you can put cuffs on me front or back, but don't bend or twist my left wrist. He

---

[2] "Q. Now at that time you understood that you weren't really under arrest? A. No, I thought I was under arrest. Q. Why did you think you were under arrest? A. Because I didn't know that it was going to be a false thing, I didn't know we were going to get arrested that day."

[3] Plaintiff stated that after the arrest, the two younger Geneva Police Officers spoke to him about working for them as a confidential informant. *See, Id*. at 64 ("After this happened I had the two younger people from Geneva come up to me and say maybe you'd like to work for us."). However, during oral argument of the subject summary judgment motion, counsel indicated that one of the officers who may have appeared older was actually younger than the oldest officer.

4

> said I don't want to hear that crap, twisted my left wrist, put it up in the middle of my back up by my head.

(*Id*. at 52-53).[4]  Plaintiff states that this twisting of his arm was painful and caused him to begin "screaming, yelling, crying because of the pain in [his] wrist." (*Id*. at 54).

Plaintiff contends that at the moment the officer was applying force to his arm, he thought that he was actually being arrested for something unrelated to the controlled sale, though he did not know what. However, he maintains that moments later, he learned that his arrest was a ruse, to protect his role as a confidential informant from the Target, when Falkey whispered to him, "You have to make this look good, you know, we're trying to make a false arrest[.]" (*Id*. at 56; *see also, id*. at 65). By that time, however, Plaintiff maintains that his wrist was already "re-broken" by the Geneva officer. *Id*. at 55-56. As soon as officers arrested the Target and removed him from the scene, they released Plaintiff. The officers paid Plaintiff for his assistance with the sting operation (*Id*. at 63), and drove him home. In the months following this incident, Plaintiff continued to work as a confidential informant on seven or eight more undercover buys. (*Id*. at 73). Plaintiff maintains that he told the officers on the day of the arrest that his wrist was re-injured. However, all of the officers contend that Plaintiff never complained about his wrist that day.

Plaintiff does not dispute that, in retrospect, his injury occurred during a sham arrest that was designed to prevent the Target from learning that Plaintiff was a confidential informant. (*Id*. at 62).[5] At the time of the arrest, though, he contends that he did not realize

---

[4] The Geneva Police officers deny that any force was used against Plaintiff or the Target while handcuffing them, and that none was necessary, since neither struggled or resisted being arrested in any way.

[5] "Q. So as you look back at this, was the purpose for you being taken to the police department in Phelps was [sic] to make sure that [the Target] saw you in custody? A. Yes, I believe that's what it was. Q. And your understanding now was that was to protect your identify as a drug informant? A. Right."

the arrest was a sham until the moment that Falkey whispered to him. Plaintiff further blames his injury on the fact that Falkey and Storer allegedly failed to tell the other members of the Drug Task Force that he had a wrist injury.[6]

However, Falkey and Storer both deny Plaintiff's version of events, insofar as he claims that he did not know, prior to his alleged injury during the incident at issue, that officers were going to conduct a mock arrest of him at the same time that they actually arrested the Target. In that regard, Falkey and Storer state that Plaintiff

> understood that as part of the 'buy' operation, that he would appear to be 'arrested,' meaning that officers would go through the motions making it appear that he was going to be arrested so as to not disclose that he was a paid informant. . . . Barlow was not actually arrested but he was, with his knowledge, made to look like he was arrested and released after this operation was completed.

Storer Affidavit [#31-7] ¶ ¶ 4-5; Falkey Affidavit [#31-8] ¶ ¶ 4-5.[7]

On November 29, 2006, Plaintiff commenced the subject action, proceeding *pro se*. On January 12, 2007, Plaintiff filed his Second Amended Complaint [#8], which is the operative complaint in this action. Plaintiff named as defendants Falkey, Storer, the County of Ontario and the "Male Geneva police officer who arrested me on January 2005" [sic]. Plaintiff alleged that Defendant "rebroke [his] left wrist and [caused] neurological damage to [his] left arm." (Second Amended Complaint [#8] at 1).

---

[6]Plaintiff contends, though, that Falkey attempted to prevent such an injury, by attempting to get to Plaintiff before any of the other officers. (*Id*. at 58-59) ("Brad tried to get to me first but could not[.]").

[7]Plaintiff indicates that part of the reason that he did not know that he was going to be arrested that day was because he had never been arrested during any prior undercover operations, and was never present when any of the other targets were arrested. However, the officers maintain that it was necessary to arrest Plaintiff in this instance, and that Plaintiff knew it, because the Target was nervous about making a sale to Storer, who he did not know, and wanted Plaintiff to be present during the sale as a "security blanket," since Plaintiff was the person who introduced him to Storer.

6

On March 19, 2007, the Court issued an Order [#13], which, *inter alia*, requested the Counsel for the City of Geneva to attempt to ascertain the name of the John Doe Geneva Police Officer who handcuffed Plaintiff. In that regard, the Court stated:

> Pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) (per curiam), the Court requests that the counsel for the City of Geneva ascertain the full name of the police officer described above who plaintiff seeks to sue. Counsel is also requested to provide the address where that defendant can currently be served.
>
> ***
>
> Counsel is hereby requested to provide the Court with the information specified above regarding the identity fo the Geneva Police Officer by April 17, 2007. Once this information is provided, plaintiff's complaint shall be deemed amended to reflect the full name of the defendant, and a summons shall be issued and the Court shall direct service on the defendant.

Order [#13] at pp. 2-3. On April 17, 2007, the attorney for the City of Geneva responded to the Court's Order, by stating in pertinent part:

> At the time of this occurrence, the following [Geneva Police Department] officers were present: Police Officer Carmen Reale; Detective Brian Choffin and Sergeant Randall Phillips. All of these officers deny that plaintiff was injured and all were present following the occurrence with plaintiff, at a pizza dinner. The officers related that at no time did plaintiff indicate he was injured or requested medical attention. Service can be made on these officers at the City of Geneva Police Department.

Letter of Gerard E. O'Connor [#14]. After receiving this information, Plaintiff, still proceeding *pro se*, served a summons, addressed to "Male Geneva Police Officers who arrested Barlow on 1/2005," on the Geneva City Clerk. On June 6, 2007, the City of Geneva's attorney filed and served an Answer to the Amended Complaint, on behalf of "Male Geneva Police Officer Who Arrested Me on January 2005."

7

On September 10, 2007, the Honorable Marian W. Payson, United States Magistrate Judge, issued a Scheduling Order [#18], which, *inter alia*, scheduled discovery and directed that "[a]ll motions to join other parties and to amend the pleadings shall be filed on or before December 6, 2007." Plaintiff never filed any further amendment to the Amended Complaint. However, on December 20, 2007, Plaintiff discontinued this action as against Falkey, Storer and Ontario County. (Stipulation of Discontinuance [#23]). Consequently, the only remaining defendant was "Male Geneva Police Officer Who Arrested Me on January 2005."

On December 6, 2007, Magistrate Judge Payson issued an Amended Scheduling Order [#22] directing, *inter alia*, that all factual discovery be completed by June 30, 2008.

On July 10, 2008, Magistrate Judge Payson issued a further Amended Scheduling Order [#29] in this action. The Order extended the discovery deadline and directed that all dispositive motions in this action be filed by December 31, 2008, and that all responses to such motions be filed by January 30, 2009. On December 9, 2008, Defendant filed a summary judgment motion. In support of the motion, Defendant maintained, *inter alia*, that Plaintiff could not prove a constitutional violation. Defendant alleged that, at most, Plaintiff might be able to establish negligence by the arresting officer, under New York State Law, but that such a claim would fail, because it would be barred by the statute of limitations, and because Plaintiff never filed a notice of claim under New York General Municipal Law § 50-e. Plaintiff did not respond to the motion.

By Decision and Order filed on April 9, 2009, the Court granted Defendant's motion and dismissed the action. In doing so, the Court stated:

> Plaintiff describes his claim as "violation of 8th Amendment - cruel punishment, violation of human rights." (Second Amended Complaint [#8] at 1). However, this is not an Eighth Amendment claim, since Plaintiff was not a convicted prisoner at the time of the injury. Nor would the Fourth Amendment apply,

> since Defendant was not actually arresting or seizing Plaintiff when the injury occurred. Instead, Defendant only gave the appearance of arresting Plaintiff, so as to protect Plaintiff's identity as a confidential informant. There is no indication that Defendant intended to injure Plaintiff, but rather, he was attempting to protect Plaintiff's identity as an informant. *See, Medeiros v. O'Connell*, 150 F.3d 164, 168 (2d Cir. 1998) (Finding no Fourth Amendment seizure where police officer accidentally wounded hostage whom he was trying to protect).
>
> Liberally construing Plaintiff's complaint, it appears that the only Constitutional claim that he could arguably raise is a Fourteenth Amendment Due Process claim. *See, Medeiros v. O'Connell*, 150 F.3d at 169 ("[I]n *County of Sacramento*, the Supreme Court indicated that where no seizure within the meaning of the Fourth Amendment has taken place, substantive due process analysis is appropriate.") *(citing County of Sacramento v. Lewis*, 523 U.S. 833, 843, 118 S.Ct. 1708, 1715 (1998)). However, such a claim would necessarily fail. As the Second Circuit has explained,
>
>> [t]he core of the concept of due process has always been an individual's freedom from arbitrary interference by the government. Alleged abuses of the police power are sufficiently arbitrary to rise to constitutional magnitude only when the conduct at issue "shocks the conscience." Substantive due process, enforced by section 1983, does not afford a cause of action for police negligence. Further, because the police must act in high-tension situations in haste, under pressure, and frequently without the luxury of a second chance, even an intermediate level of fault, such as recklessness, is not enough to impose constitutional liability.
>
> *Medeiros v. O'Connell*, 150 F.3d at 169-170 (citations and internal quotation marks omitted). In the instant case, the Court finds, as a matter of law, that Plaintiff's allegations do not support a substantive due process claim, since, even assuming that Defendant was negligent or even reckless in injuring Plaintiff's arm, his conduct did not approach the level of "conscience shocking" behavior.

Decision and Order [# ] at pp. 5-6.

Although Plaintiff did not oppose Defendant's motion, he did file an appeal of the Court's Decision and Order, and on August 18, 2011, the Second Circuit Court of Appeals

reversed and remanded the action. The Circuit Court found that it was appropriate to construe Plaintiff's pleading as asserting a claim of excessive force under the Fourth and Fourteenth Amendments. However, the Circuit Court held that this Court erred in granting summary judgment, since the record was under-developed, and there were genuine issues of fact, such as "questions surrounding the identity of the defendant, the knowledge the defendant had of the plaintiff's status as a confidential informant, the degree of force the defendant applied to the plaintiff during the incident at issue, and the extent of the plaintiff's injuries." The Panel indicated that the "defendant's knowledge of Barlow's confidential informant status" was a "key fact."[8]

In any event, the Circuit Panel found that this Court erred in determining, with regard to the Fourth Amendment claim, that Plaintiff was never actually "seized" or arrested, and that the "arrest" was merely a sham to protect Plaintiff's identity. Instead, the Panel found that there were issues of fact as to whether Plaintiff reasonably believed that he was being arrested, and as to the degree of force that was used. On this point, the panel wrote that "there are outstanding issues of fact as to several aspects of the 'sham' arrest that would affect the legal inquiry into the existence of a seizure here, including whether Barlow knew he would be subjected to such a fictitious arrest on the day in question, and whether the defendant was aware of Barlow's confidential-informant status at the time of the arrest." The Panel stated that "the intent that counts under the Fourth Amendment is the intent that has

---

[8]With regard to the defendant's identity, the Circuit Panel expressed frustration that although the City of Geneva had identified the three officers who were present during the arrest, it did not specifically state which officer arrested Plaintiff. The Panel did not comment on the fact that although Plaintiff possessed the names of the three potential defendants for almost two years prior to the summary judgment motion being filed, and despite the fact that he claimed to be on familiar terms with many law enforcement officials in Ontario County, he had apparently made no effort to identify which of the three had arrested him. Nor had he made any effort to amend his pleading to name the arresting officer prior to the expiration of the Court-ordered deadline for adding parties.

10

been conveyed to the person confronted" by the police, and that therefore, this Court "erred in relying on the presumed subjective intention of the defendant officer – who, in the court's view, was attempting to protect Plaintiff's identity as an informant." The Panel further stated that the arresting officer's subjective intent was irrelevant to "whether he applied excessive force during the sham arrest of Barlow." The Panel did not indicate whether or not this Court's analysis of the Fourteenth Amendment claim was correct. The panel ended its decision with two directions to this Court. First, it directed the Court to "renew its attempts to determine the identity of the defendant officer on remand." Second, it "strongly urge[d]" the Court to appoint *pro bono* counsel for Plaintiff.

Upon remand, on November 4, 2011, Magistrate Judge Payson appointed Plaintiff's current counsel to represent him in this action *pro bono*. *See*, Decision and Order [#39]. Following a scheduling conference, on December 7, 2011, Magistrate Judge Payson issued an Amended Scheduling Order [#40], which reopened discovery and set a new discovery deadline of February 29, 2012. On February 13, 2012, Plaintiff's counsel deposed Storer. On February 15, 2012, Magistrate Judge Payson issued a further Amended Scheduling Order [#43], which, *inter alia*, extended the discovery deadline to March 30, 2012. Subsequently, on February 24, 2012, Plaintiff's counsel deposed Falkey and the three Geneva Police Department Police Officers: Police Officer Carmen Reale ("Reale"); Detective Brian Choffin ("Choffin"); and Sergeant Randall Phillips ("Phillips"). Plaintiff did not attend the officers' depositions,[9] which is unfortunate, since his attendance at the depositions would

---

[9] Apparently, Plaintiff's counsel did not think that Plaintiff would need to observe the officers during the depositions, and that the officers would themselves indicate which of them had handcuffed Plaintiff. However, while the officers agreed that one of them must have handcuffed Plaintiff, they could not say for sure which of them had placed handcuffs on him, since the arrest had occurred years earlier and was not a memorable event for them. The officers further stated that they had not completed any reports about the incident, since it was not the Geneva Police Department's investigation, and they were merely present to provide assistance at the request of the Ontario County Sheriff's Office.

have allowed him to observe the officers, and, presumably, to clear up one of the factual issues identified by the Second Circuit, namely, the identity of the officer who allegedly re-broke his arm.

In any event, at deposition, all of the officers indicated that they were fully aware that Plaintiff was a confidential informant, and that they faked his arrest in order to hide the fact that he had set up the Target. Several of the officers agreed that Plaintiff had been present during a meeting prior to the "buy bust" that day, and had been specifically told that he would be "arrested" that day along with the Target. Some of the officers recalled that Plaintiff mentioned, prior to the operation, that he had a sore wrist or sore shoulder. However, some of the officers did not recall Plaintiff being at that meeting. The officers also had differing recollections about certain aspects of the event. For example, Falkey remembered that Choffin had been present, but could not remember Reale or Phillips being present. Similarly, Reale did not recall that Storer had made an undercover buy from the Target.

On May 31, 2012, Defendant filed the subject second motion for summary judgment [#47]. Defendant contends that he is entitled to summary judgment on the Fourth Amendment claim, since Plaintiff was never arrested and could not have reasonably believed that he was arrested. *See*, Def. Memo of Law [#47-15] at 4 ("Given the totality of the [circumstances,] . . . it is inconceivable that Plaintiff would believe he was in custody and that Fourth Amendment protection would be triggered."). Defendant further contends that any Fourteenth Amendment claim would also have to be dismissed, since the record does not indicate anything other than possibly negligent conduct by the arresting officer. Defendant also contends that any state-law claim is barred, because Plaintiff never filed a Notice of Claim as required by General Municipal Law § 50-e, and because Plaintiff did not commence this action within one year and ninety days as required by General Municipal Law § 50-i. In

12

response, Plaintiff contends that the Court cannot grant summary judgment on the Fourth Amendment claim since there are still issues of fact as to whether Plaintiff was arrested and whether the amount of force used was reasonable. Alternatively, Plaintiff argues that the Court cannot grant summary judgment as to the Fourteenth Amendment claim, since a jury could find that the arresting officer's conduct was "shocking to the conscience," if it concluded that the officer knew about Plaintiff's injured wrist but nevertheless " twisted [Plaintiff's] left wrist, put it up in the middle of [Plaintiff's] back up by [his] head."[10] Plaintiff does not maintain that he has any viable state-law claim.

On January 24, 2013, counsel for the parties appeared before the undersigned for oral argument.

DISCUSSION

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that

---

[10] The Court notes that the Second Amended Complaint in this action does not allege a Fourth Amendment claim or a Fourteenth Amendment claim, but instead, alleges only an Eighth Amendment claim. In connection with Defendant's first summary judgment motion, the Court liberally construed Plaintiff's *pro se* pleading to raise the strongest arguments that it suggested, which included Fourth and Fourteenth Amendment claims. However, Plaintiff is not presently proceeding *pro se*, and the Court is not required to liberally construe his pleading as if he were. There is no indication that Plaintiff's counsel sought to amend the pleadings after she was appointed. Accordingly, at the present time, the only actual claim pleaded by Plaintiff is an Eighth Amendment claim, which clearly would fail as a matter of law, since Plaintiff was not a convicted inmate when this claim arose. However, in light of the circumstances of the case, including the fact that Plaintiff's counsel was appointed *pro bono*, and the fact that there would be no prejudice to Defendant since he addressed the claims in his summary judgment motion, the Court will proceed as if the Second Amended Complaint asserts claims under the Fourth and Fourteenth Amendments. In the future, if counsel are ever appointed to represent a *pro se* litigant, they should consider whether to request leave to amend the *pro-se*-drafted pleading.

no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249; *see also*, FED. R. CIV. P. 56(e)("When a motion for summary judgment is made and supported as provided in this rule, and adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(e). Moreover, since Plaintiff is proceeding *pro*

14

*se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

At the outset, to the extent that Plaintiff was attempting to assert any state-law claim, it has been abandoned. Accordingly, Defendant is granted summary judgment as to any state-law claim. However, Defendant's motion for summary judgment is otherwise denied.

As discussed above, the additional discovery that took place after the Second Circuit's remand did not resolve certain issues of fact, such as the identity of the arresting officer, the amount of force that as used, or whether Plaintiff had been told that he would be "arrested" as part of the "buy bust" operation that day. On the other hand, there does not appear to be any evidentiary proof in admissible form in the record to controvert the officers' contention that they all knew that Plaintiff was a confidential informant and that they were merely pretending to arrest him in order to protect his identity as an informer. Nevertheless, Defendant's argument, as clarified by counsel at oral argument, is that despite these issues of fact, there still could not have been any Fourth Amendment seizure, since no reasonable person in Plaintiff's position could have believed that he was actually being arrested. On that point, Defendant notes, *inter alia*, that Plaintiff admits he knew *generally* that he might be mock-arrested during his work as a confidential informant, in order to protect his identity as an informer, and that he had just participated in a buy bust sting operation only moments before being told to "freeze."

However, viewing the record in the light most-favorable to Plaintiff, the Court cannot make such findings as a matter of law. In that regard, for example, Plaintiff insists that he was not told that he would be mock arrested that day. Moreover, it appears that the Geneva Police Officers, who were the first officers to confront Plaintiff and the Target following the controlled buy, were unfamiliar to Plaintiff. Consequently, the Court finds that there are

issues of fact that preclude an award of summary judgment to Defendant on the Fourth Amendment claim. The Court similarly finds that even if there were no seizure, there are triable issues of act as to the Fourteenth Amendment claim, since a jury might find the arresting officer's conduct "conscience shocking" if it believed Plaintiff's version of the facts.

CONCLUSION

Defendant's motion for summary judgment [#47] is granted in part and denied in part as discussed above. All state-law claims are dismissed with prejudice. The Fourth and Fourteenth Amendment claims may proceed to trial.

SO ORDERED.

Dated: March 4, 2013
Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge